UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MONACO INDUSTRIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:13-CV-660-PLR-HBG |
| ) | |
| SHOPPER LOCAL, LLC ) | |
| MARKET TECH MEDIA ) | |
| CORPORATION, and ) | |
| GREG E. LINDBERG, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the defendants' motions to dismiss certain claims contained in plaintiff's First Amended Complaint. Because the allegations of the First Amended Complaint contain sufficient factual matter that is plausible on its face to state a claim for relief on each cause of action, defendants' motions will be denied.

### I. Factual Background

Plaintiff Monaco Industries is a limited liability company with its principal place of business in Knoxville, Tennessee. Defendant Market Tech is a Delaware corporation with its principal place of business in California. Market Tech's sole shareholder is defendant Shopper Local, a North Carolina limited liability company. Shopper Local's sole member and manager is defendant Greg Lindberg, a resident of North Carolina.

1

Monaco is in the business of manufacturing and distributing custom paper rolls for use in on-demand printers. Market Tech and Shopper Local are in the business of printing coupons on the back of receipt paper rolls and distributing those printed paper rolls to their clients.

In 2010, Brian Greenberg, a representative of Market Tech, contacted Monaco. Greenberg said that Lindberg had recently purchased Market Tech, and using Lindberg's finances as assurance, Market Tech wanted to purchase paper products from Monaco. Thereafter, Monaco received purchase orders from Market Tech at the rate of approximately one per week, with instructions to invoice Market Tech at its California address and fax number. On February 13, 2013, Market Tech directed Monaco to invoice Shopper Local at Market Tech's address and fax number; then on April 19, 2013, an order with a fax header reading "From: Shopper Local" directed invoicing back to Market Tech. Some checks for payment were on an account in the name of Market Tech. Then checks began coming from an account in the name of Shopper Local. Based on the manner in which business was conducted, Monaco believed that Market Tech and Shopper Local were one and the same entity utilizing the same address and fax number.

After the purchase orders starting becoming subject to credit holds, Lindberg directly contacted Monaco's Chief Manager, Richard Jansen, by email regarding payments to Monaco and that status of purchase orders. Lindberg requested that Monaco release orders being held for payment and would notify Jansen of payments he was directing to be made to Monaco so as to procure release of orders. Lindberg threatened to terminate business with Monaco if Monaco did not release the hold.

2

In November, 2012, Jansen met with Lindberg in North Carolina. Lindberg reiterated that he was the sole person with decision making authority as to whether the contract with Monaco would continue and as to all payments, including who the product would be ordered from, how much product would be ordered, how the product would be paid for, and when payment would be made. Lindberg stated that if Monaco wanted to keep the business, it would do so only on Lindberg's certain payment terms, including weekly payments on the receivables, and that any outstanding balance with Monaco would be paid at the end of each month, *i.e.*, there would be a "sweep" of the receivables accounts. Lindberg further stated that he would personally be involved with the sweep payments and would control such payments. Based on Lindberg's assurances that payments would be timely made, Monaco continued filling Market Tech's and Shopper Local's purchase orders. After the November meeting, several of defendants' checks bounced. Each time, Greenberg told Jansen that he would have to talk with Lindberg, and indicated Lindberg would have to move funds around or somehow get the money to cover the bounced checks. Monaco's invoices were paid, and sweeps of the defendants' accounts occurred monthly from October 2012 to April 2013.

Starting in April 2013, several of defendants' purchase orders were filled by Monaco, but never paid by the defendants. The unpaid invoices included 23 purchase orders totaling $318,657.22. In early June 2013, Monaco contacted defendants regarding the non-payment. Monaco was told that a check for the May sweep was in process and would arrive on June 11, 2013, and Monaco was asked to continue processing the orders from May as well as new June orders. Relying on this assurance that the May sweep

payment was being processed, Monaco shipped three orders totaling $41,049.00 to defendants in May 2013. In June, Monaco filled two purchase orders from defendants totaling $25,085.50, and later that month Monaco shipped goods on two more purchase orders totaling $32,839.20.

On June 18, 2013, a Shopper Local check was returned for in-sufficient funds. Monaco then ceased any further shipments to defendants. On June 21, 2013, Lindberg notified Monaco that he was terminating the business relationship of the defendants with Monaco. Monaco states that Lindberg again offered to pay the outstanding balance of $417,000 in installments, which he would personally guarantee. No payments were received by Monaco from any of the defendants on this outstanding balance.

Monaco filed suit on November 1, 2013 against Lindberg, Market Tech, and Shopper Local, alleging (1) suit on sworn account; (2) breach of contract; (3) fraud; (4) promissory fraud; (5) negligent misrepresentation; (6) liability on dishonored check; (7) contract interference; (8) civil conspiracy; (9) corporate veil piercing as between Market Tech and Shopper Local; (10) corporate veil piercing as between Lindberg and Market Tech and Shopper Local; and (11) unjust enrichment.

Defendant Lindberg moves to dismiss all claims against him on the following grounds: (1) lack of personal jurisdiction; (2) failure to sufficiently plead the elements of fraud; (3) failure to allege facts that would support piercing the corporate veil so as to predicate personal liability over Lindberg; (4) failure to sufficiently plead claims for interference with contract and civil conspiracy; (5) Monaco's unjust enrichment claim regards the same subject matter as its breach of contract claim and as such, should be

4

dismissed; and last, (6) Monaco's allegation that Lindberg, "regularly engages in a pattern of behavior where products are purchased on credit and delivered and then Lindberg and his entities refuse to pay on the terms previously agreed," should be stricken as redundant, immaterial, impertinent, or scandalous.

Defendant Shopper Local moves to dismiss all claims against it on the following grounds: (1) lack of personal jurisdiction; (2) failure to sufficiently plead a claim for breach of contract against Shopper Local; (3) failure to sufficiently plead the elements of fraud, negligent misrepresentation, and civil conspiracy; and (4) failure to show a benefit conferred on Shopper Local so as to support a claim for unjust enrichment.

Defendant Market Tech moves to dismiss certain claims against it on the following grounds: (1) Monaco's claim for breach of contract should be dismissed for failure to state a claim upon which relief can be granted; and (2) failure to sufficiently plead claims for fraud, negligent misrepresentation, and civil conspiracy.

Monaco has responded to defendants' motions to dismiss [R. 22, 23, 24, 35, 36]. In addition, Monaco filed its First Amended Complaint on March 25, 2014 [R. 28]. Following the filing of the First Amended Complaint by Monaco, defendant Lindberg filed a motion to dismiss and strike portions of the First Amended Complaint, on the same grounds as previously asserted -- lack of personal jurisdiction; failure to plead fraud with particularity; insufficient allegations to support piercing of the corporate veil; insufficient facts to support a claim for interference with contract, civil conspiracy, or unjust enrichment; and to strike Monaco's allegation that Lindberg, "regularly engages in a pattern of behavior where products are purchased on credit and delivered and then

5

Lindberg and his entities refuse to pay on the terms previously agreed," as redundant, immaterial, impertinent, or scandalous.

Defendant Shopper Local has also filed a motion to dismiss all claims of the First Amended Complaint on the same grounds previously asserted – lack of personal jurisdiction; and insufficient allegations to support piercing the corporate veil as regards to Shopper Local. The court will consider the defendants' various motions to dismiss in light of the First Amended Complaint.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. A formulaic recitation of the elements of a cause of action will not do. *Id.* Nor will an "unadorned, the-defendant-unlawfully harmed me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading must instead "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . .

6

be a context-specific task that requires the reviewing Court to draw on its judicial experience and common sense."  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Iqbal*, 129 S. Ct. at 1948.

### III. Analysis

**A.     Personal Jurisdiction**

Monaco's First Amended Complaint alleges federal jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship.  A motion to dismiss pursuant to FRCP 12(b)(2) requires the court to determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendants.  In ruling on a Rule 12(b)(2) motion, the court has three procedural alternatives:  (1) the court may determine the motion on the basis of written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; or (3) it may conduct an evidentiary hearing on the merits of the motion.  *See Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).  In this case, the court finds that the record is sufficiently developed to decide the matter based upon the briefs, affidavits, and other evidence submitted by the parties.

The plaintiff always bears the burden of establishing personal jurisdiction, but the weight of that burden depends upon the manner in which the court elects to proceed. *Id.* Where, as here, the court elects to rule without an evidentiary hearing, the plaintiff's

7

burden is lightened considerably. In such a case, the plaintiff need only present a *prima facie* case for jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003). As with a Rule 12(b)(6) motion, the court should consider the pleadings and affidavits in the light most favorable to the plaintiff, however, the plaintiff "may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise, specific facts showing that the court has jurisdiction." *Serras*, 875 F.2d at 1214. Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss should be denied, even in the face of controverting evidence presented by the moving party. *Id.*

When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional limitations. *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 110, 115 (6th Cir. 1994). Tennessee law provides as follows:

> Persons who are nonresidents of Tennessee . . . are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from: (1) the transaction of any business within the state; (2) any tortious act or omission within the state . . . (6) any basis not inconsistent with the constitution of this state or of the United States . . . .

Tenn. Code Ann. § 20-2-214(a). Where, as is the case with Tennessee, a state's long-arm statute reaches as far as the limits of the United States Constitution, the court "need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins.Co.,* 91 F.3d 790, 793 (6th Cir. 1996). "Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum

contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1940); *Bird v. Parsons,* 289 F.3d 865, 871-72 (6th Cir. 2002). Personal jurisdiction over a non-resident defendant may be asserted under either general or specific theories of jurisdiction. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir. 1992).

General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Kerry Steel, Inc. v. Paragon Indus. Inc.,* 106 F.3d 147, 149 (6th Cir. 1997). Monaco does not allege that defendants had continuous and systematic contacts with Tennessee so as to establish general jurisdiction; rather, Monaco avers the court has personal jurisdiction over defendants pursuant to Tenn. Code Ann. § 20-2-214(a).

In the absence of general jurisdiction resulting from continuous and systematic contacts with the forum state, specific personal jurisdiction still may be found when a defendant purposely directs his activities toward citizens of the forum state and litigation results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471 (1985); *J.I. Case Corp. v. Williams,* 832 S.W.2d 530, 532 (Tenn. 1992). In such a case, "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The Sixth Circuit utilizes a three-part test to determine whether personal jurisdiction would violate the requirements of the due process clause. First, the defendant

9

must purposely avail himself of the privilege of acting in the foreign state or causing a consequence in the foreign state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the foreign state to make the exercise of jurisdiction over the defendant reasonable. *Southern Mach. Co. v. Mohasco Indus. Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

This court has personal jurisdiction over the defendants pursuant to Tenn. Code Ann. § 20-2-214(a), as the defendants intentionally directed their activity to Tennessee by contacting a Tennessee corporation to supply goods. The First Amended Complaint avers that Defendant Lindberg controls and conducts the business affairs of Shopper Local and Market Tech. Defendants Shopper Local and Market Tech sent purchase orders to Monaco's facility in Knoxville, Tennessee. Monaco filled those purchase orders in Knoxville, Tennessee, and mailed the goods as directed by defendants. The invoices directed defendants to submit payment to Monaco's office in Knoxville, Tennessee, and thus, the failure to pay occurred in Knoxville, Tennessee. Lindberg specifically directed Shopper Local and Market Tech not to pay the amounts owed. The purchase orders and unpaid invoices form the basis for the claims in the First Amended Complaint and result directly from the transaction of business in Tennessee. The claims against defendants are directly to the transaction of business that occurred in Tennessee. The court finds that the First Amended Complaint pleads sufficient facts to establish that defendants purposefully availed themselves of the privilege of acting in Tennessee and caused a consequence in Tennessee, such that personal jurisdiction over defendants is

10

reasonable. Defendants' motions to dismiss for lack of personal jurisdiction will be denied.

## B. Breach of Contract

Shopper Local moves to dismiss the breach of contract claim, arguing it was not a party to the alleged contract with Monaco. In Tennessee, a plaintiff alleging a breach of contract claim must show "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011).

The First Amended Complaint alleges that Shopper Local and its alter ego, Market Tech, placed several orders with Monaco for shipment of products; these orders were filled by Monaco; and neither Market Tech, Shopper Local, or Lindberg paid for the products, resulting in damages to Monaco in the amount of $416,621.32. In support of the allegations, Monaco has attached to the First Amended Complaint, purchase orders, along with shipping confirmations for each purchase order. As pled, these allegations are sufficient to state a claim for breach of contract, and defendant's motion to dismiss will be denied.

## C. Fraud / Promissory Fraud

Under Tennessee law, fraud and promissory fraud are separate actions with the significant difference between the two depending on the nature of the representation. *See Noblin v. Christiansen,* 2007 WL 1574273 at *8-*9 (Tenn. Ct. App. 2007). Claims of fraud must be pled with particularity. FRCP 9(b). To state a claim for fraud (intentional misrepresentation), a plaintiff must aver: (1) the defendant made a representation of a

11

present or past fact; (2) which was false when made; (3) the representation involved a material fact; (4) that the defendant either knew was false or did not believe to be true, or was made recklessly without knowing whether it was true or false; (5) plaintiff did not know that the representation was false when made, and was justified in relying on the truth of the representation; and (6) plaintiff sustained damages as a result of the representation. *Hodge v. Craig,* 382 S.W.3d 325, 342-43 (Tenn. 2012).

To state a claim for promissory fraud, a plaintiff must aver: (1) a promise of future conduct; (2) that was material; (3) made with the intent not to perform; (4) that plaintiff reasonably relied upon; (5) to plaintiff's injury. *Noblin,* 2007 WL 1574273 at *9. Under promissory fraud, the misrepresentation need not relate solely to existing facts to be fraudulent, but may include future promises. *Id.*

The First Amended Complaint alleges "existing" representations made by Lindberg, Shopper Local, and Market Tech regarding the present financial status of Shopper Local and Market Tech and their ability to pay Monaco, made to induce Monaco to extend credit, and to procure further shipments of Monaco's products. Thus, the court finds that Monaco has sufficiently pled a claim for fraud.

Monaco has also sufficiently pled a claim for promissory fraud. Throughout the course of dealings between Monaco and defendants in May and June of 2013, Monaco extended defendants credit secured not only by representations from Lindberg, Market Tech, and Shopper Local, that a check had been cut and mailed, but also that the check would arrive by June 11, 2013. Monaco avers that when the check did not arrive on June 11, 2013, Monaco was told that the check for the next payment was already being put

12

together.  These representations constitute promises of future conduct.  Monaco further avers that these representations were made with the intention that payment would not be made, despite being a material fact which Monaco relied on to its detriment.  All the elements of both fraud and promissory fraud have been pled with particularity pursuant to FRCP 9(b).  Accordingly, defendants' motions to dismiss the fraud claims will be denied.

**D.      Negligent Misrepresentation**

In Tennessee, a claim of negligent misrepresentation must establish:  (1) that the defendant supplied information to the plaintiff; (2) the information was false; (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied on the information.  *Morrison v. Allen,* 338 S.W.3d 417, 437 (Tenn. 2011).  For negligent misrepresentation claims brought against professionals and business people, Tennessee has adopted the Restatement (Second) of Torts approach.  *Id.*  The applicable Restatement section states:

> One, who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.* (citing Restatement (Second) of Torts § 552(1) (1977)).

The allegations of the First Amended Complaint are sufficient to state a claim for negligent misrepresentation.  Monaco avers that if defendants' actions were not intentional, they were at best negligent.  Defendants were either intentionally misleading Monaco or negligent in their representations as to the timing of the checks and whether

13

there were sufficient funds to cover the checks. The court agrees. Therefore, defendants' motions to dismiss Monaco's claim for negligent misrepresentation will be denied.

E.  **Interference with Contract**

Under Tennessee statutory and common law, a plaintiff asserting an interference with contract claim must show the following: (1) there must be a legal contract; (2) the wrongdoer must have knowledge of the existence of the contract; (3) there must be an intention to induce its breach; (4) the wrongdoer must have acted maliciously; (5) there must be a breach of the contract; (6) the act complained of must be the proximate cause of the breach of the contract; and (7) there must have been damages resulting from the breach of contract. *Atchley v. RK Co.,* 224 F.3d 537, 540 (6th Cir. 2000) (quoting *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997)). In addition, Tenn. Code Ann. § 47-50-109 states:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Monaco's First Amended Complaint states that Monaco had a contract with Market Tech and Shopper Local evidenced by several purchase orders and invoices; Lindberg knew about the business relationship these entities had with Monaco; under Lindberg's direction, Market Tech and Shopper Local placed a number of orders during the last two months of their relationship with Monaco totaling at least $318,657.22; Lindberg caused a bad check to be issued to Monaco; and upon the check's return for

14

insufficient funds, Lindberg terminated Market Tech's and Shopper Local's business relationship with Monaco, causing Monaco financial harm. Monaco has alleged facts sufficient to plead a claim for intentional interference with contract against Lindberg, and Lindberg's motion to dismiss this claim will be denied.

F.  **Civil Conspiracy**

Under Tennessee law, a plaintiff asserting a claim for civil conspiracy must show the following: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *PNC Multifamily Capital Ins. Fund v. Bluff City Comm. Dev. Corp.,* 387 S.W.3d 525, 556 (Tenn. Ct. App. 2012).

The First Amended Complaint alleges that Lindberg colluded with Market Tech and Shopper Local with the intent to defraud and misrepresent information to Monaco so that Monaco would continue to ship products to defendants when defendants had no intention of paying for the products. The claim is sufficiently pled for Monaco to pass the threshold to proceed to discovery. Accordingly, defendants' motions to dismiss the civil conspiracy claim will be denied.

G.  **Unjust Enrichment**

To establish an unjust enrichment claim, a plaintiff must have conferred a benefit upon the defendant and not been given just compensation for that benefit. *United States v. Goforth*, 465 F.3d 730, 734 (6th Cir. 2006). In Tennessee, unjust enrichment is applied in the absence of a contract. *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d

15

592, 596 (Tenn. 1998); *see also World Healthcare Sys., Inc. v. SSI Surgical Servs., Inc.*, 2011 WL 2199979 (E.D. Tenn. June 7, 2011). "Courts will impose a contractual obligation under an unjust enrichment theory when: (1) there is no contract between the parties or a contract has become unenforceable or invalid; and (2) the defendant will be unjustly enriched absent a quasi-contractual obligation." *Id.* Unjust enrichment applies when there is no contract, express or implied in fact, to prevent a party from keeping money that they justifiably should not keep. *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009).

Monaco explains that in the event the contracts between Monaco and the defendants are found to be invalid, then the theory of unjust enrichment applies. In support of the claim, Monaco has alleged that by shipping goods to Market Tech and Shopper Local, Monaco provided goods to defendants for use in their operations. Despite using these goods for their own benefit and profit, none of the defendants ever compensated Monaco. As the sole owner of Shopper Local, which in turn solely owned Market Tech, Lindberg also was unjustly enriched. The court finds this claim sufficiently pled, and defendants' motions to dismiss will be denied.

**H.     Motion to Strike**

Defendant Lindberg moves to strike the allegation of the First Amended Complaint that he, "regularly engages in a pattern of behavior where products are purchased on credit and delivered and then Lindberg and his entities refuse to pay on the terms previously agreed," on the grounds that the allegation is redundant, immaterial, impertinent, or scandalous.

16

Although a court may strike redundant, immaterial, or scandalous matter, striking a pleading is considered "a drastic remedy to be resorted to only when required for the purposes of justice" and "should be sparingly used by the courts." *EEOC v. FPM Group Ltd.,* 657 F.Supp.2d 957, 966 (E.D. Tenn. 2009). A party moving to strike pursuant to FRCP 12(f) must show that the matters sought to be stricken have "no possible relation to the controversy." *Starnes Family Office, LLC v. McCullar,* 765 F.Supp.2d 1036, 1059 (W.D. Tenn. 2011).

The allegation that Lindberg moves to strike relates directly to Monaco's claims. Monaco avers that Market Tech and Shopper Local obtained products on credit extended by Monaco for which they have not paid. Monaco further avers that it was wrongfully induced to extend credit to Market Tech and Shopper Local in reliance on misrepresentations of fact by Lindberg as to the credit worthiness of the defendants. Monaco alleges that the defendants acted in concert in creating a false impression as to their ability to pay for goods and services purchased from Monaco. It alleges that Market Tech and Shopper Local are owned or controlled by Lindberg and are not operated as separate entities. Lindberg offered payment of $417,000 to be paid in installments, which he also offered to personally guarantee. Because the allegations at issue relate to the claims in controversy, Lindberg's motion to strike will be denied.

### IV. Conclusion

In light of the foregoing discussion, the following action is taken:

1. Defendant Lindberg's motions to dismiss [R. 13, 30] are **DENIED**.

2. Defendant Shopper Local's motions to dismiss [R. 15, 32] are **DENIED**.

3. Defendant Market Tech's partial motion to dismiss [R. 17] is **DENIED**.

**IT IS SO ORDERED.**

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**